UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANA GIBSON,

                Plaintiff,

v.                                     **DECISION AND ORDER**
                                                17-CV-272S

NICOLE A. HEARY, et al.,

                Defendants.

## I. INTRODUCTION

In this action, pro se plaintiff Dana Gibbons alleges, pursuant to 42 U.S.C. § 1983, that the Defendants, all of whom are employees of the New York Department of Corrections and Community Services ("DOCCS"), violated her constitutional rights while she was an inmate at the Wende Correctional Facility.[1] Relevant to this Decision & Order, Plaintiff alleges that Defendant C.K. Wilkins ("Wilkins") violated her Fourteenth Amendment rights by denying her due process in a disciplinary hearing.

Presently before this Court is a motion to dismiss Gibson's Fourteenth Amendment Due Process claim brought by Defendant Wilkins under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[2] (Docket No. 22.) For the following reasons, the moving Defendant's motion is denied.

## II. BACKGROUND

The following facts, drawn from Gibson's amended complaint and her opposition

---

1 Gibson is now confined in the Attica Correctional Facility. (Docket No. 35, p. 1.)
2 By Order dated July 16, 2018, the Court stayed the response deadlines for all Defendants other than Defendant Wilkins pending the resolution of the instant motion to dismiss. (Docket No. 28).

to Defendant Wilkins' motion to dismiss, are assumed true for purposes of the moving Defendant's motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks omitted)); Villafane v. Sposato, No. CV163674JFBAKT, 2017 WL 4179855, at *1 (E.D.N.Y. Aug. 22, 2017), report and recommendation adopted, No. 16CV3674JFBAKT, 2017 WL 4157220 (E.D.N.Y. Sept. 15, 2017) ("The following factual allegations have been taken from Plaintiff's Complaint and the Plaintiff's Opposition to Defendants' motion to dismiss. Because Plaintiff is proceeding pro se, the Court is obligated to construe his pleadings liberally 'to raise the strongest arguments that they suggest.'") (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474–75 (2d Cir. 2006)).

On or about Thursday, December 17, 2015, at approximately 2:15 pm, "while still imprisoned in the solitary confinement housing unit of Wende" Correctional Facility, "Plaintiff was summoned to appear at a prison inmate disciplinary hearing proceeding before Defendant Wilkins as the presiding Hearing Officer." (Am. Compl., Docket No. 7, ¶ 20). Following the disciplinary hearing, Defendant Wilkins rendered a disposition finding Plaintiff guilty of violating "numerous DOCCS rules which included refusing urinalysis testing and refusing a direct order" while serving a term in solitary confinement, or special housing unit ("SHU"). (Id. ¶¶ 19, 20). Defendant Wilkins rendered this disposition "without providing Plaintiff with a written statement of evidence relied upon and the reason for the disposition." (Id. ¶ 20 (emphasis in original)). Plaintiff was sentenced to 180 days in the SHU. (Id. ¶ 20). Plaintiff's punishment was reduced on

appeal to 60 days, which she served from December 17, 2015 to February 15, 2016. (Id. ¶ 21). During this period in SHU, "Plaintiff suffered a number of unlawfully harsh atypical and significant hardship forms of treatment in [SHU] including but not limited to [1] unlawful restraint and cell-shield orders; [2] unlawful confinement, and more," (Id. ¶ 21), which "contributed to [her] developing an acute psychological disorder based upon her having to endure such harsh treatment in solitary confinement." (Pl. Opp'n, Docket No. 26, at 8).

More specifically, Gibson alleges that, while confined in the SHU from December 17, 2015 to February 15, 2016, she "was subject to endure an extraordinary means of mechanical physical restrains consisting of handcuffs secured very tightly around her wrists positioned in front of her body with a restrictive security 'black box' over the handcuffs" as well as "a waist chain tightly secured around [her] waist with a padlock and tightly to the black box and handcuffs with a padlock" which caused her "great amounts of pain to both her lower back and wrists." (Id. at 10). She also alleges that she was deprived of her right to one hour of "outdoor out of cell" exercise per day for the entire 60-day sentence in SHU; in other words, that she was confined in the SHU 24 hours a day for 60 straight days. (Id. at 8-9).

### III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally and interpret them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

Because Gibson is proceeding pro se, this Court has considered her submissions and arguments accordingly.

Gibson's claim against the moving defendant is that Defendant Wilkins violated her Fourteenth Amendment right to due process when Defendant Wilkins failed to provide Gibson with a written statement of the disposition of guilty articulating the evidence relied upon in rendering that disposition. Defendant Wilkins seeks dismissal of this claim under Rule 12(b)(6) on the basis that Gibson fails to allege a liberty interest protected by the Fourteenth Amendment, as required.

**A.     General Legal Principles**

   **1.     Rule 12 (b)(6)**

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8 (a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557.

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Legal conclusions, however, are not afforded the same presumption of truthfulness. Id. (the tenet that a court must accept as true all factual allegations contained in a complaint is inapplicable to legal conclusions).

To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  Id. (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Twombly, 550 U.S. at 556; Fed. R. Civ. P. 8 (a)(2).  Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible."  Id. at 570.

For pro se actions, the Supreme Court has rejected the notion that the plausibility standard requires amplification with factual allegations to render the claim plausible.  See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).  In Erickson, the Supreme Court reversed the dismissal of a prisoner's Eighth Amendment claim, holding that the court of appeals had "depart[ed] from the liberal pleading standards" of Rule 8 (a).  Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson, 551 U.S. at 94).  Although the Court did not clarify when the plausibility standard requires factual amplification, it noted that "a pro se complaint however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson, 551 U.S. at 94 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).  The Court has examined Plaintiff's Amended Complaint and her opposition papers against this backdrop.

5

**2. Section 1983 and Personal Involvement**

Gibson brings her Fourteenth Amendment claim under 42 U.S.C. § 1983. Civil liability is imposed under Section 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must establish that the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); see also Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983. See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999). It is well settled in this circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983. See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement need not be

active participation. It can be found "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). Thus, personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that constitutional acts were occurring.

Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

**B. Gibson's Fourteenth Amendment Claim: Liberty Interest in SHU Confinement**

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

There are two broad categories of due process claims—substantive and procedural. A substantive due process claim is based upon the deprivation of a constitutionally protected life, liberty, or property interest. See B.D. v. DeBuono, 130 F.

Supp. 2d 401, 431 (S.D.N.Y. 2000). A procedural due process claim is based upon the deprivation of a protected life, liberty, or property interest, without notice and an opportunity to be heard. Id. at 432-33. With respect to either type of due process claim "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988).

To state a procedural due process claim arising out of a prison disciplinary hearing, a plaintiff must allege that he or she (1) possessed a liberty interest, and (2) was deprived of that interest without being afforded sufficient process. See Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004); Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000).

"A prisoner's liberty interest is implicated by prison discipline, such as [special housing unit] confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). Such discipline must be unusually onerous. See Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999).

Two primary factors inform this determination: the conditions and duration of confinement. See J.S. v. T'Kach, 714 F.3d 99, 106 (2d Cir. 2013); Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (quoting Sandin, 515 U.S. at 484) ("Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to

8

discretionary confinement.'"). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." Sealey v. Giltner, 197 F.3d 578, 586 (2d Cir. 1999) (citations omitted).

As to the conditions of confinement, they are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." Davis v. Barrett, 576 F.3d 129, 134 (2d Cir. 2009).

As to the duration of confinement, the Second Circuit has avoided setting bright-line rules, see Palmer, 364 F.3d at 65, but it has offered some guidance: First, confinement of longer than 305 days under normal SHU conditions is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under Sandin." Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000). Second, confinement of an intermediate duration—between 101 and 305 days—requires "development of a detailed record" to assess the conditions of the confinement relative to ordinary prison conditions. Id. at 232. For this period, the court must "make a fact-intensive inquiry, examining the actual circumstances of SHU confinement in the case before it without relying on its familiarity with SHU conditions in previous cases." Palmer, 364 F.3d at 65 (quotations and internal citations omitted). Only when the particular SHU conditions are undisputed can the court resolve the issue short of trial. See id. Third, confinement of less than 101 days could constitute an "atypical and significant hardship"

9

if the conditions are more severe than normal SHU conditions, though typically such confinement under normal SHU conditions will not give rise to due process rights. See id.; Palmer v. Goss, No. 02 Civ. 5804 (HB), 2003 WL 22327110, at *6 (S.D.N.Y. Oct. 10, 2003) (noting that courts in the Second Circuit "generally require that the duration of confinement be at least 100 days" to constitute an "atypical and significant hardship.") And finally, claims involving confinement of less than 30 days under normal SHU conditions may be subject to dismissal without development of a detailed record. See Palmer, 364 F.3d at 65.

However, "[i]n the absence of a detailed factual record, [the Second Circuit has] affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short—less than the 30 days that the Sandin plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." Id. at 65–66; cf. Blalock v. Jacobsen, No. 13-CV-8332 JMF, 2014 WL 5324326, at *5 (S.D.N.Y. Oct. 20, 2014) ("Even if the relevant period of confinement were sixty-six days, however, the Court could not conclude as a matter of law that Blalock's time in confinement was insufficient to implicate due process rights, as Blalock alleges that the conditions he suffered in segregated housing were far below the conditions experienced in general confinement."). Given that Gibson's 60-days in SHU confinement is twice as long as the period of time in which courts may, at this stage in litigation, dismiss such due process claims in the absence of a detailed factual record, this ground alone is enough to warrant denial of Defendant Wilkins' motion to dismiss given the absence of a detailed factual record at this time.

However, even when the duration of confinement alone does not give rise to due process rights, courts must also examine the conditions of confinement to determine whether the confinement as a whole meets the "atypical and significant hardship" standard. See, e.g., Bacon v. Phelps, No. 9:15-CV-1502 (DNH/CFH), 2018 WL 4178221, at *6 (N.D.N.Y. July 31, 2018) ("Thus, the length of plaintiff's SHU confinement alone does not set forth a constitutional violation. Assessment of the conditions of confinement is necessary to determine whether plaintiff had a protected liberty interest.").

Applying those standards here, and assuming the duration of Gibson's confinement standing alone does not implicate due process, she has sufficiently alleged that she suffered "atypical and significant hardship" to survive Defendant Wilkins' motion to dismiss. Gibson alleges that, while confined in the SHU from December 17, 2015 to February 15, 2016, she "was subject to endure an extraordinary means of mechanical physical restraints consisting of handcuffs secured very tightly around her wrists positioned in front of her body with a restrictive security 'black box' over the handcuffs" as well as "a waist chain tightly secured around [her] waist with a padlock and tightly to the black box and handcuffs with a padlock" which caused her "great amounts of pain to both her lower back and wrists." (Pl. Opp., Docket No. 26, at 10). She also alleges that she was deprived of her right to one hour of "outdoor out of cell" exercise per day for the entire 60-day sentence in SHU. (Id. at 8-9). These allegations are sufficient to survive a motion to dismiss. See, e.g., Ortiz v. McBride, 380 F.3d 649, 655 (2d Cir. 2004) (allegations that the plaintiff was kept in SHU 24 hours a day, was not permitted an hour of daily exercise, and was prevented from showering for weeks at a time, could render a

90-day SHU sentence an atypical and significant hardship); Holmes v. Grant, No. 03 CIV. 3426 RJH RLE, 2006 WL 851753, at *9 (S.D.N.Y. Mar. 31, 2006) ("The fact that he was confined in his cell for twenty-four hours a day for thirteen days and forced to wear restraints whenever he left his cell may be sufficient to establish that his confinement was "atypical and significant" and thus implicates a liberty interest."); Aikens v. Royce, No. 14-CV-663 (KMK), 2016 WL 5720792, at *4 (S.D.N.Y. Sept. 30, 2016) ("Plaintiff is correct that being denied the opportunity to exercise as a condition of confinement may, in certain circumstances and in conjunction with other factors, result in an atypical confinement."). Absent a further factual record, the Court is hesitant to conclude that the conditions Gibson was subject to from December 17, 2015 to February 15, 2016 were not "atypical and significant." Accordingly, Defendant Wilkins' motion to dismiss is denied.

**C. Gibson's Fourteenth Amendment Claim: Liberty Interest in Disciplinary Hearings**

Gibson has also alleged that Defendant Wilkins violated her due process rights by failing to provide "a written statement of the evidence relied upon and the reason(s) for the disposition of guilt" stemming from her December 17, 2015 disciplinary proceedings. (Amend. Compl. ¶¶ 20, 21). "'[I]t has long been clear that inmates retain due process rights in prison disciplinary hearings.'" Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004) (quoting Hanrahan v. Doling, 331 F.3d 93, 97 (2d Cir. 2003)). "Certain due process protections therefore apply where disciplinary proceedings . . . would subject an inmate to solitary confinement in the SHU." Id. (internal citations omitted). Accordingly, in disciplinary proceedings, "[i]nmates are entitled to advance written notice of the charges;

a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and <u>a written statement of the disposition, including supporting facts and reasons for the action taken</u>." <u>Id.</u> (emphasis added). Although Defendant Wilkins does not dispute or move to dismiss this allegation in Gibson's complaint, it bears mention that Gibson has also sufficiently stated a claim for a violation of due process stemming from his disciplinary hearing that resulted in the December 17, 2015 to February 15, 2016 confinement in the SHU.

## IV. CONCLUSION

For the foregoing reasons, the moving Defendant's motion to dismiss Gibson's Fourteenth Amendment Due Process claim is DENIED. Defendants will have 14 days from the entry date of this decision to file an answer consistent with Rule 12(a)(4)(A).

## V. ORDERS

IT HEREBY IS ORDERED, that the Motion to Dismiss (Docket No. 22) is DENIED.

FURTHER, that Defendants shall file an answer within 14 days of the entry date of this decision consistent with Rule 12(a)(4)(A).

SO ORDERED.

Dated: March 13, 2019
Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge