UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANA GIBSON,

        Plaintiff,

  v.

NICOLE HEARY[1], ROBERT D. SIGLIN, C.K.        **DECISION AND ORDER**
WILKINS, J. WEST, M. CLARK, T.X. GETER,
R.W. DELGIORNO, BRENDA ZELKO, C.           17-CV-272S
FISCUS, RUSSELL J. FOX, JOHN DOE-2, T.
HAWK, BRYAN BASHAW, A. GIWAOSAGIE,
and NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION ("DOCCS"),

        Defendants.

## I.  INTRODUCTION

In this action, Plaintiff Dana Gibson seeks damages and injunctive relief from Defendants for violating her constitutional rights when they denied her religious foods and an electric menorah in the special housing unit ("SHU"), used excessive force against her, and failed to provide her with sufficient assistance or a written disposition at two disciplinary hearings. Before this Court is Defendants' motion for summary judgment (Docket No. 100), which this Court will grant in part and deny in part, for the following reasons.

## II.  BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of the

---

[1] This Court dismissed Gibson's claims against Heary in an order dated March 8, 2018. (Docket No. 11.) The caption of this case was not amended, but this Court hereby reiterates that Heary is no longer a party to this action.

motion for summary judgment. This Court takes the facts in the light most favorable to Gibson, the non-moving party.  See <u>Mitchell v. City of New York</u>, 841 F.3d 72, 75 (2d Cir. 2016) (at summary judgment, a court "views the evidentiary record in the light most favorable to ... the non-moving party"). Further, cognizant of the distinct disadvantage that *pro se* litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest.  See <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994). Since Gibson is proceeding *pro se*, this Court considers her submissions and arguments accordingly.

Dana Gibson is a transgender inmate who was in the custody of Defendant DOCCS at all relevant times. (Defendants' statement of undisputed facts, Docket No. 100-2, ¶ 1.) She was an inmate at Wende Correctional Facility during the December 17, 2015, hearing, and at Elmira Correctional Facility during the June 3, 2016, incident, the June 30-July 8, 2016 hearing, and the denials of matzah and grape juice in July 2016. (<u>Id.</u>) She was an inmate at Upstate Correctional Facility during Hanukkah in December 2016. (Docket No. 110 at p. 72.) At all relevant times, Defendants Siglin, West, Wilkins, Zelko, Geter, Fiscus, Bashaw, Clark, Delgiorno, Giwaosagie, Fox, and Hawk, were employees of DOCCS assigned to Wende, Elmira, and Upstate Correctional Facilities. (Docket No. 100-2, ¶ 2.)

### 1.  The December 2015 disciplinary hearing

On December 17, 2015, Defendant C.W. Wilkins presided over a Tier III Disciplinary Hearing for violations related to Gibson's refusal to submit a urine sample. ("the December 17 hearing") (Docket No. 100-2, ¶ 16.) Gibson did not attend this hearing.

(Id., ¶ 18.) She waived her attendance on a waiver form, where she wrote as her reason for not attending, "just want disposition." (Id., ¶ 17.) Wilkins found Gibson guilty of disobeying an order and refusing a urine test, and sentenced Gibson to 180 days in SHU. Wilkins created a written record of his disposition, where he stated that the basis of his finding was the misbehavior report of Correctional Officer Tanguay and Gibson's "atrocious violent disciplinary record." (Docket No. 100-16 at p. 4.) Gibson asserts that she never received a copy of Wilkins's disposition but was informed of it by a corrections officer a few days later. (Gibson affidavit, Docket No. 110 at p. 54), while Defendants assert that she received it on an unspecified later date. (Docket No. 100-1 at p. 19.) After successfully appealing this outcome, Gibson served a reduced sentence of 60 days in SHU for this violation. (Gibson Deposition, Docket No. 100-4 at p. 8; see also Docket No. 110 at p. 54.)

### 2.  The June 3, 2016, Incident

The parties' accounts of the June 3, 2016, incident diverge dramatically. Defendants assert that on June 3, 2016, Gibson refused a direct order to lock into her cell, lunged at Defendant Geter, and shoved him with both hands. (Docket No. 100-2, ¶ 3; see also Affidavit of Terrance Geter, Docket No. 100-9 at p. 1.) Defendants further assert that, in response, Defendants Geter, Fiscus, and Zelko were present when body hold maneuvers and mechanical restraints were applied to Gibson. (Docket No. 100-9 at p. 2.) Gibson denies that she lunged at or shoved Geter, or that any body hold maneuvers were used. (Docket No. 110 at p. 42.) Rather, she asserts that she was sitting in her cell when Defendants Zelko and Geter entered. (Docket No. 110 at p. 60.) Gibson states that Zelko said, "I hate you transgender fake ass women… you're a fucken kike man and we

are going to beat your ass like the kike man that you are – fag." (Id.) Gibson asserts that Zelko and Geter punched her, then dragged her outside her cell, where Defendants Fiscus, Fox, and John Doe-2 joined them in kicking and punching her. (Id.)

After this incident, Facility Nurse Shannon Keeney evaluated Gibson in the infirmary. (Docket No. 100-2, ¶ 6.) Nurse Keeney filled out a use-of-force report at 10:25 a.m. (Docket No. 100-11 at p. 4.) The report states: "Complained of right knee pain, low back pain-no injuries visible" and "No treatment required at this time." (Id.)

Defendants assert that Gibson's complaints of back and knee pain preexisted the June 2016 incident, and are documented in grievances dating back to April 2011. (Docket No. 100-2, ¶ 8.) Gibson asserts that her back and knee had healed, but were reinjured on June 3, 2016. (Docket No. 110 at p. 44.)

Upon Gibson's admission to SHU, another incident occurred which is not the subject of this action. After that incident, around 10:30 a.m., Nurse Candace Rae Baker evaluated Gibson and observed no injuries, but noted that Gibson complained of back and knee pain. (Docket No. 100-20, ¶ 7.)

### 3.  The June 30-July 8, 2016 hearing

Defendant Joshua West was assigned to act as Gibson's assistant to prepare for a Tier III disciplinary hearing addressing the June 3, 2016, incident. (Docket No. 100-2, ¶ 9.) Gibson asked West to interview two witnesses and provide her with eleven documents in preparation for the hearing. (Id., ¶ 10; see also "Documents and Things," Docket No. 100-13 at pp. 33-34.) The documents Gibson requested fall into the following categories: reports about the incident and its aftermath (use-of-force reports, unusual incident reports, to-from memos, Geter's employee accident report; a cell frisk and pack up report;

4

and the logbooks from the watch commander and Geter's, Zelko's, and Fiscus's posts on June 3, 2016); DOCCS rules (Directives 4932 and 4933 and the 2016 version of the Inmate Rule Book); and a list of Gibson's mental health and other medications. (Docket No. 100-13 at p. 33.) West's affidavit states that he gave Gibson copies of DOCCS Directives 4933, 4932, and 4910 and the Inmate Rules. (West Affidavit, Docket No. 100-15 at p. 2.) A report he filled out on June 29, 2016, indicates that he interviewed Zelko and Fiscus on Gibson's behalf. (Id. at p. 4.) Gibson denies that she was given any of these documents. (Docket No. 110 at pp. 44-45.)

The Tier III hearing began on June 30, 2016, and concluded on July 8, 2016, after two adjournments. (See Hearing Transcript, Docket No. 100-13 at pp. 10-25.) At the hearing, Hearing Officer Robert Siglin went through Gibson's requests in detail. On June 30, Siglin read aloud the Inmate Misbehavior Report authored by Geter. (Docket No. 100-13 at pp. 7-8.) Siglin informed Gibson that the "to-from" memos she had requested were not yet available. (Id. at p. 11.) Siglin denied Gibson's request for copy of the use-of-force report, but read it aloud. (Id.) Siglin also refused to give Gibson a copy of the preliminary unusual-incident report, but read it aloud. (Id. at p. 13-14.) Siglin informed Gibson that the final unusual-incident report she had requested was not yet available. (Id. at p. 13.)  He denied Gibson's request for Geter's Employee Accident and Incident Form. (Id. at p. 15.) Gibson received a copy of the watch commander's log, but not the log books for the posts of Zelko, Geter, and Fiscus, as she had requested. (Id. at p. 17.) Siglin also showed Gibson a photograph of Fiscus's left arm with scratches on it. (Id. at p. 19.)

Siglin then adjourned the hearing to obtain other documents Gibson had requested. (Id. at 20.)  When the hearing resumed on July 5, 2016, Siglin told Gibson that

he had taken mental health testimony outside her presence. (Id.) Siglin did not give Gibson the list of medical and mental health medications she had requested, but stipulated to the fact that her medications caused mood changes, making her aggressive or suicidal at times. (Id.). Siglin looked at a facility call out list, another document Gibson had requested, and told Gibson that her name did not appear on it. (Id. at 21.)

On July 8, 2016, Siglin found Gibson guilty of all the violations charged. He based his decision on the misbehavior report, the use-of-force report, the unusual-incident report, the photograph of the Fiscus's injuries, the mental health testimony, and his own observations during the hearing. (Id. at 23.) He considered Gibson's disciplinary history off assaults on staff as an aggravating factor. (Id.) He sentenced Gibson to 545 days in SHU, but suspended 180 days of her sentence, and delayed its imposition by 180 days. (Id.) Gibson ultimately served 123 days in SHU on this sentence. (Docket No. 110 at p. 12).

### 4. The July 2016 deprivations of matzah and grape juice

Gibson asserts that she did not receive matzah and grape juice for the Jewish sabbath on four total occasions in July and August of 2016. (Docket No. 100-2, ¶ 28.) After one such occasion in July 2016, Gibson wrote a letter to the facility rabbi. (Id., ¶ 24.) Defendants assert that the rabbi told her an administrative error had caused the denial, and remedied the error within one month. (Id., ¶ 24-25.) Gibson disputes that the rabbi ever told her an administrative error had occurred. (Docket No. 110 at p. 49.)

### 5. Hanukkah 2016

Gibson requested an electric menorah in SHU for Hanukkah of 2016. (Docket No. 100-2, ¶ 21.) Defendant Bryan Bashaw denied this request, informing Gibson that

DOCCS directives did not allow it. (Id.). DOCCS directive 4933 § 302.2(f) lists all personal items inmates may possess while housed in SHU, and specifies that any property not explicitly named must be confiscated and stored until the inmate leaves SHU. (Id., ¶ 22.) Directive 4933 does not list a menorah, electric or otherwise, as a permitted item in SHU. (Id.) General population inmates, i.e. those not in SHU, were permitted to have electric menorahs during Hanukkah of 2016. (Gibson Affidavit, Docket No. 110 at p. 73.)

## III.  DISCUSSION

Gibson asserts five claims against Defendants.[2] She claims that Defendant Wilkins violated her Fourteenth Amendment due process rights by failing to give her a written disposition of the December 17, 2015 disciplinary hearing. (First Cause of Action.) She claims that Defendants Zelko, Geter, Fiscus, Fox, and John Doe-2 violated her right to be free from cruel and unusual punishment, under the Eighth Amendment, by assaulting her on June 3, 2016. (Second Cause of Action.) She claims that Defendants West and Siglin violated her Fourteenth Amendment due process rights by failing to properly assist her at the June 30-July 8, 2016 disciplinary hearing, and that Defendants DOCCS and Bashaw violated her rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") when they prohibited her from having a menorah and kosher Jewish food while in SHU during Hanukkah. (Third Cause of Action.) Finally, she claims that Defendants Clark, Hawk, Delgiorno, and Giwaosagie violated her First Amendment rights when they denied her Jewish religious foods on four separate occasions while she was in SHU. (Fourth Cause of Action.)

---

[2] Her complaint lists four causes of action, but this court will treat her third cause of action as two separate claims, one for denial of due process under the Fourteenth Amendment, and one for burdening her free exercise of religion under the First Amendment and RLUIPA.

Defendants move for summary judgment on all of Gibson's claims.

**A.    Summary Judgment**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."  Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment.  Anderson, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is

properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading...."); D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).  That is, there must be evidence from which the jury could reasonably find for the non-moving party.  See Anderson, 477 U.S. at 252.

In the end, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

## B.   Federal Constitutional Claims

Gibson brings her federal claims pursuant to 42 U.S.C. § 1983. Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in federal statutes and the Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Gibson's claims are grounded in the First, Eighth, and Fourteenth Amendments.

## C.   Gibson's First Amendment and RLUIPA claims

9

Defendants argue that any injuries suffered by Gibson by being deprived of matzah and grape juice on four occasions in July 2016 are *de minimis*, and that she therefore has not suffered a substantial burden on her free exercise of religion.  Defendants also argue that the DOCCS regulation prohibiting menorahs in SHU is reasonably related to a legitimate penological interest.  Gibson argues that Defendants have not met their burden on either point.

### 1.  First Amendment free exercise of religion

The First Amendment of the United States Constitution guarantees the right to the free exercise of religion. U.S. Const. amend. I. To establish a free exercise claim, a prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006) (internal citations and quotations omitted). In determining whether a religious belief is sincere, "an individual need only demonstrate that the beliefs professed are sincerely held and, in the individual's own scheme of things, religious." Ford v. McGinnis, 352 F.3d 582 (2d Cir. 2003). A substantial burden exists "where [a defendant] puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jolly v. Coughlin, 76 F.3d 468, 476-77 (2d Cir. 1996).

Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." Salahuddin, 467 F.3d at 275. When determining whether the burden imposed by the defendants is reasonable rather than irrational, a court must evaluate: (1) whether there

is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; and (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. Turner v. Safley, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 2262, 96 L. Ed. 2d 64 (1987).

### 2. RLUIPA

RLUIPA imposes a more stringent standard than does the First Amendment. It bars the government from imposing a substantial burden on a prisoner's religious exercise unless the challenged conduct or regulation "further[s] a compelling governmental interest and [is] the least restrictive means of furthering that interest." Holland v. Goord, 758 F.3d 215, 224 (2d Cir. 2014). See also 42 U.S.C. § 2000cc–1(a). If a plaintiff makes a showing of a substantial burden, the defendant must then show that the practice (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc–1(a).

### 3.  The denial of matzah and grape juice was not a substantial burden.

Defendants argue that the denial of matzah and grape juice on four separate occasions in July 2016 does not constitute a substantial burden on Gibson's exercise of her religion. Gibson does not address this argument directly, but instead challenges Defendants' characterization of their failure to provide religious foods as an "administrative error." Defendants' arguments are convincing.

"It is well settled that the periodic or temporary denial of religious meals does not constitute 'substantial' interference with free exercise, and is insufficient to establish a

11

First Amendment claim." <u>Lewis v. Zon</u>, 920 F. Supp. 2d 379, 385–86 (W.D.N.Y. 2013) (citing <u>Walker v. Fischer</u>, 2012 U.S. Dist. LEXIS 40846 at *38 (N.D.N.Y. 2012) ("[a]bsent a pattern more clearly reflecting a calculated, deliberate infringement ... on more than an isolated, *de minimis* basis," deprivation of religious meals on two occasions does not give rise to a First Amendment claim); <u>Tafari v. Annetts</u>, 2008 U.S. Dist. LEXIS 77015 at *3 (S.D.N.Y. 2008) (adopting Magistrate Judge's Report and Recommendation concluding that denial of two kosher meals is a "*de minimis,* not a substantial" interference with a prisoner's free religious exercise); <u>Odom v. Dixion</u>, 2008 WL 466255, at *10–12, 2008 U.S. Dist. LEXIS 11748 at *31–*35 (W.D.N.Y. 2008) (failure to provide a few kosher meals over the course of five days is insufficiently substantial to establish a First Amendment claim).

Because Gibson asserts that she was deprived of matzah and grape juice a maximum of four times, she has not shown a substantial burden on the exercise of her religion, as required by both the First Amendment and RLUIPA. Summary judgment will therefore be granted to Defendants Clark, Hawk, Giwaosagie, and Delgiorno on this claim.

### 4. The denial of an electric menorah in SHU has a rational connection to a legitimate penological interest.

Defendants do not argue that the denial of a menorah at Hanukkah was a substantial burden on Gibson's exercise of her Jewish faith. They argue, however, that Directive # 4933, pursuant to which menorahs are not permitted in SHU, is reasonably related to a legitimate penological interest. Gibson argues that inmates in the general population are permitted to have electric menorahs, and that Defendants have not shown the rationality of barring such items in SHU. This Court finds Defendants' argument

12

convincing.

Defendants argue that they have a legitimate safety interest in limiting items in SHU that could easily be fashioned into weapons. (Docket No. 100-1 at p. 25.) They agree with Gibson that there is no ready alternative to a menorah, but argue that there is a great danger to staff and other inmates when inmates possess the means to fashion homemade weapons. This Court finds that there is a rational connection between the barring of menorahs in SHU and the interests of facility safety. It therefore grants summary judgment to Defendants on Gibson's First Amendment claim.

### 5.  Defendants have not shown that denying a menorah in SHU was the least restrictive measure available to them.

In passing RLUIPA, Congress mandated that courts apply more searching scrutiny to prison policies that restrict the exercise of religion. Holt v. Hobbs, 574 U.S. 352, 364–65, 135 S. Ct. 853, 864, 190 L. Ed. 2d 747 (2015) ("The least-restrictive-means standard is exceptionally demanding.")

The parties agree that the deprivation of a menorah during Hanukkah substantially burdened Gibson's religious exercise. To succeed at summary judgment, therefore, Defendants must point to record evidence that their policy is the least restrictive means to achieve a compelling interest. They have not done so.

In her affidavit, Gibson asserts that DOCCS permits Jewish prisoners in the general population to have electric menorahs. (Docket No. 110 at p. 73.) She argues that Defendants have not pointed to any evidence connecting the ban on electric menorahs in SHU to Defendants' interests. For their part, Defendants do not attempt to justify Directive 4933 in terms of the statutory language of RLUIPA. They nowhere argue, let alone bring forth record evidence demonstrating, that the outright ban on menorahs in

13

SHU is the least restrictive means to accomplish a compelling penological interest. See Salahuddin v. Goord, 467 F.3d 263, 277 (2d Cir. 2006) ("The defendants' burden on summary judgment is to 'point[ ] to [something] in the record suggesting that the [denial of religious exercise] *was viewed as* preventing [threats to inmate safety].' This requirement makes good sense because it ensures that prison officials actually had, not just could have had, a legitimate reason for burdening protected activity. We would not be surprised if such evidence were forthcoming at trial … but it is absent from the record as presently developed.") (quoting Turner, 482 U.S. at 98) (applying the First Amendment standard to a motion for summary judgment). While  it is possible that banning electric menorahs in SHU was the only way to achieve Defendants' compelling interest in inmate and officer safety, Defendants have not brought forth any facts supporting this proposition, or nor do they explain why electric menorahs are permitted in the general population but not in SHU. Defendants therefore have not met their burden at summary judgment.

Because the only remedy provided by RLUIPA is injunctive relief, this Court grants summary judgment on this claim to all individual defendants in their individual capacities. Holland v. Goord, 758 F.3d 215, 224 (2d Cir. 2014). See also Washington v. Gonyea, 731 F.3d 143, 145–46 (2d Cir. 2013) (per curiam). Further, "[i]n this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." Booker v. Graham, 974 F.3d 101, 107 (2d Cir. 2020) (citing Salahuddin, 467 F.3d at 272). Gibson has been transferred from Upstate, where Bashaw works as chaplain, making moot her RLUIPA claim against Bashaw in his official capacity. This Court therefore grants summary judgment to Bashaw on Gibson's claim against him

14

in his official capacity.

But because DOCCS, the only remaining defendant for this claim, has not met its burden at summary judgment, this Court will deny its motion as to Gibson's RLUIPA claim. This denial is not based on the merits of any defense Defendants could make in a pre-trial motion—which this Court would entertain—but solely on the grounds that Defendants failed to make an argument based on the RLUIPA standard in their briefing.

**D.    Eighth Amendment claim**

Defendants argue that summary judgment is warranted as to Gibson's excessive force claims because the record shows that she did not suffer any discernable injury, and there is no evidence of malice. Gibson argues that she suffered back and knee pain, and that the anti-Semitic and anti-transgender comments made by Defendants during the attack show the requisite state of mind.

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 11 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991); U.S. Const. amend. VIII. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." Helling v. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (quotation and citation omitted). Thus, inmates have the right to be free from the "unnecessary and wanton infliction of pain" at the hands of prison officials. Romano v. Howarth, 998 F.2d 101, 104 (2d Cir. 1993) (quoting Estelle v. Gamble, 429 U.S. 97, 102–05, 97 S. Ct. 285, 290–91, 50 L. Ed. 2d 251 (1976)).

To succeed on an Eighth Amendment excessive force claim, a plaintiff must

15

establish (1) objectively, that the defendant's actions violated contemporary standards of decency, and (2) subjectively, that the defendant acted wantonly and in bad faith. See Flynn v. Ward, 9:15-CV-1028, 2016 WL 1357737, at *8 (N.D.N.Y. Apr. 5, 2016) (quoting Blyden v. Mancusi, 186 F.3d 252, 262-63 (2d Cir. 1999)).

### 1.  The Objective Requirement

To meet the objective requirement, the alleged violation must be sufficiently serious by objective standards, those being contemporary standards of decency.  Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); Blyden, 186 F.3d at 263. Although the "de minimis use of force will rarely suffice to state a constitutional claim," Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993), "the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance 'contemporary standards of decency are always violated." Flynn, 2016 WL 1357737, at *8 (quoting Blyden, 186 F.3d at 263).  Thus, de minimis use of force is excluded from constitutional recognition "provided that the use of force is not of a sort repugnant to the conscience of mankind."  Green v. Morse, No. 00-CV-6533, 2005 WL 1490301, at *2 (W.D.N.Y. June 23, 2005) (quoting Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)).

### 2.  The Subjective Requirement

To meet the subjective requirement, "the inmate must show that the prison officials involved 'had a wanton state of mind when they engaged in the misconduct.'" Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) (quoting Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir. 1994)). In this context, the test for wantonness "is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003). Factors to be considered are "the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Id. (citation omitted).

### 3. Gibson's Excessive Force Claims

Gibson claims that Zelko, Geter Fiscus, and Fox used excessive force against her in violation of her Eighth Amendment rights when Zelko and Geter entered her cell and started attacking her, and when Fiscus and Fox joined them outside Gibson's cell. Defendants point to the inconsistency between Gibson's account and the lack of injuries she suffered, arguing that any use of force was *de minimis* and that they were acting in good faith to restore discipline when Gibson refused to lock in.

Although Gibson's excessive force claim is weak and her evidence is thin, this Court denies Defendants' motion for summary judgment because there are genuine issues of material fact concerning what happened inside and outside Gibson's cell on June 3, 2016.

Even when a plaintiff has relied exclusively on his own testimony, courts have denied summary judgment to defendants as long as the plaintiff's "testimony was not contradictory or rife with inconsistencies such that it was facially implausible." Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 726 (2d Cir. 2010). Here, Gibson consistently maintains that she was sitting in her cell when Zelko and Geter entered. She states consistently, in her deposition testimony and her affidavit, that Zelko and Geter made anti-Semitic and anti-transgender comments while assaulting her. (See Docket No.

17

100-4 at p. 9; Docket No. 110 at p. 60.) She denies pushing Geter. She asserts that she experienced knee and back pain after the incident, something she claimed at the time and continues to claim.

Her testimony describing the June 3, 2016, assault is "more than mere conclusory allegations subject to disregard; [it is] specific and detailed," and "made under penalty of perjury." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003). And it is not so "contradictory or rife with inconsistencies," even though it contains some, "that it [is] facially implausible." Fincher, 604 F.3d at 726. This Court finds that Gibson's "own sworn statement," even standing alone, is "adequate to counter summary judgment." Randolph v. Griffin, 816 F. App'x 520, 523 (2d Cir. 2020).

Further, this court cannot weigh the parties' credibility at this stage. As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." Randolph, 816 F. App'x at 523–24 (citing Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005); see also Vital v. Interfaith Med. Ctr., 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Defendants encourage this Court to note the inconsistencies in Gibson's account, and to compare her account to the lack of any visible injuries at her examinations by Nurses Keeley and Baker. These inconsistencies may weaken Gibson's claim, but they would not preclude a reasonable jury from finding that excessive force was used against her on the day in question. See Griffin v. Crippen, 193 F.3d 89, 91–92 (2d Cir. 1999).

Further, viewed in the light most favorable to Gibson, a reasonable jury could find that defendants' use of force, accompanied by statements she claims they made about

her religious and transgender status, rose to the level of malicious or sadistic conduct. Randolph, 816 F. App'x at 524; Harris, 818 F.3d at 65 (quoting Wright v. Goord, 554 F.3d 255, 289 (2d Cir. 2009)). Because there are questions of material fact regarding the reason for and amount of force used, and whether Defendants acted with malice, Defendants' motion for summary judgment on Gibson's Eighth Amendment excessive force claims will be denied.

**E.     Fourteenth Amendment Due Process claim**

Gibson claims that her due process rights were violated when Wilkins failed to give her a written disposition after the December 17, 2015 hearing, and when West and Siglin failed to provide her with sufficient assistance before the June 30-July 8, 2016 hearing. Defendants argue that Gibson waived her right to a written disposition by failing to attend the December hearing and suffered no prejudice from not receiving a written disposition. As to the July 8, 2016 hearing, Defendants argue that Gibson received all the employee assistance she was due and that any error was harmless because she suffered no prejudice. Gibson originally claimed, additionally, that Siglin violated her rights by failing to act as a fair and impartial hearing officer at the June 30-July 8 hearing, but she states that she is withdrawing that claim. (Docket No. 110 at p. 21.)

**1.  Fourteenth Amendment Inmate Due Process Rights**

Gibson alleges that the Tier III hearings on December 17, 2015, and July 8, 2016, were constitutionally infirm.  She thus asserts a procedural due process claim.  To prevail on this claim, she must establish (1) that she possessed a protected liberty or property interest and (2) that Defendants deprived her of that interest through constitutionally insufficient procedures.  See Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citing

Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996)); Durran v. Selsky, 251 F. Supp. 2d 1208, 1214 (W.D.N.Y. 2003).

      **a.**    **Liberty Interest**

"A liberty interest may arise from either of two sources – the Due Process Clause itself [or] the laws of the States." Rodriguez v. McLoughlin, 214 F.3d 328, 337 (2d Cir. 2000) (quoting Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989) (internal quotation omitted)).  A prisoner must identify a viable liberty interest before he or she can demonstrate that such an interest was infringed.  Palmer v. Richards, 364 F.3d 60, 64 n. 2 (2d Cir. 2004); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (per curiam).

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Palmer, 364 F.3d at 64 (quoting Sandin v. Connor, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). The prisoner's actual punishment must be examined in making this determination.  See Scott v. Albury, 156 F.3d 283, 287 (2d Cir. 1998) (per curiam).  In this regard, the Second Circuit has consistently held that both the duration and conditions of confinement must be considered.  See Palmer, 364 F.3d at 64; Ortiz v. McBride, 323 F.3d 191, 195 (2d Cir. 2003) (per curiam); Sealey v. Giltner, 197 F.3d 578, 586 (2d Cir. 1999) ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical.").

Here, Gibson asserts that both periods she spent in SHU (60 days after the

20

December 2015 hearing and 123 days after the July 2016 hearing) implicate a liberty interest. In moving for summary judgment, Defendants do not argue that Gibson did not have liberty interests at stake at both hearings, instead arguing only that Gibson received all the process she was due. (Docket No. 100-1 at p. 15.)  In her response to Defendants' motion, Gibson asserts that she experienced atypical and harsh conditions because she was subject to delayed dental health care and deprived of educational services, earphones, adequate cleaning materials, law library services, adequate and nutritious foods, religious undergarments, and holy day meals. (Docket No. 110 at pp. 10-13.) In reply, Defendants for the first time argue that Gibson has not sufficiently asserted harsh and atypical conditions that can be attributed to any hearing determination. (Docket No. 116 at p. 7.) This Court declines to address an argument made for the first time in reply papers, and therefore considers that Defendants have waived this argument.

### b. Process Due

After determining whether a liberty interest is implicated, a court must determine whether the inmate received the process he or she was due. Wolff v. McDonnell, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). Due process rights provide for the following procedural safeguards: "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." Smith v. Fischer, 803 F.3d 124, 127 (2d Cir. 2015) (per curiam) (quoting Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004)); see also Wolff, 418 U.S. at 563-71.

"[A] prisoner is entitled to assistance in 'marshaling evidence and presenting a

defense' in advance of a prison disciplinary hearing. <u>Pilgrim v. Luther</u>, 571 F.3d 201, 206 (2d Cir. 2009) (quoting <u>Eng v. Coughlin</u>, 858 F.2d 889, 897 (2d Cir.1988)). The assistance must be provided "in good faith and the best interests of the inmate," <u>Id.</u>  Nevertheless, this is a "qualified" right, and does not rise to the Sixth Amendment right to counsel. <u>Loving v. Selsky</u>, No. 07–CV–6393, 2009 WL 87452, at *2 (W.D.N.Y. 2009). Some courts have held that due process does not require that a prisoner be provided with all the documentary evidence he has requested. <u>LeBron v. Artus</u>, No. 06-CV-0532 VEB, 2008 WL 111194, at *9 (W.D.N.Y. Jan. 9, 2008) (citing <u>Shephard v. Coughlin</u>, No. 91 CIV. 8725(MBM), 1993 WL 77385, at *5 (S.D.N.Y. Mar.16, 1993)). At a minimum, however, an assistant should perform the investigating tasks which the inmate, were he able, could perform for himself. <u>Shepherd</u>, 1993 WL 77385, at *5.

The Second Circuit has endorsed harmless-error review for inmate due process claims. <u>Pilgrim v. Luther</u>, 571 F.3d 201, 206 (2d Cir. 2009) (citing <u>Eng</u>, 858 F.2d at 897-98 (2d Cir. 1988) and <u>Powell v. Coughlin</u>, 953 F.2d 744, 750 (2d Cir. 1991)). Courts perform this review on a case-by-case basis to determine whether an inmate was prejudiced.

### 2. Gibson's claims

#### a. No written disposition from Wilkins

Gibson did not attend the December 17, 2015 Tier III hearing and therefore did not immediately receive a written disposition. Defendants argue in the alternative: (1) that she waived her right to a written disposition by waiving her right to attend the hearing;  (2) that she eventually received a disposition and any delay did not prejudice her; and (3) that even if she never received a written disposition, this error did not prejudice her. Gibson

argues that she did not knowingly waive her right to a written disposition, and that she was prejudiced because if she had known the bases of Wilkins's disposition, she could have brought more arguments in her appeal.

As to Defendants' first argument, this Court does not find that Gibson knowingly waived her right to a written disposition. Defendants submit her waiver form with their motion. In it, Gibson states her reason for not attending as "just want disposition." (Docket No. 100-16 at p. 10.) Defendants argue that Gibson must have known that by not attending she would not receive a disposition at that time. Gibson, on the other hand, argues that in waiving her right to attend the hearing she did not knowingly waive her right to a written disposition, and that mental health issues at the time made it difficult for her to be around people.

An inmate's right to receive a written disposition of a disciplinary hearing is well-established. See Smith, 803 F.3d at 127. This Court is unaware of any precedent, nor do Defendants cite any, stating that the only way an inmate can receive this disposition is at the hearing.

Defendants also argue in their memorandum that Gibson eventually received a disposition, citing her deposition testimony. Gibson counters that she did receive the disposition, but only through a FOIL request which cost her money to file. (Docket No. 110 at p. 15.) Because she states that she never received the disposition from Defendants, this is still a disputed fact.

Even assuming, however, that Gibson never received a written disposition of the hearing, this Court must determine if a reasonable jury could find that she was prejudiced in any way by this failure. Courts have found due process violations where an inmate was

deprived of documents that would have enabled them to understand the basis of the charges against them, or of witness testimony that could have proved exculpatory.  See, e.g., Samuels v. Selsky, 166 F. App'x 552, 555 (2d Cir. 2006) (reversing grant of summary judgment where inmate was unaware that his handwritten papers were the focus of the case against him and nondisclosures as to documents and confidential source information deprived him of a meaningful "opportunity to explain or challenge this inculpatory evidence," and where no "reasonable justification" for the nondisclosure was proffered in the district court); Ayers v. Ryan, 152 F.3d 77, 81 (2d Cir. 1998) (reversing grant of summary judgment where hearing officer, acting as assistant, failed to identify witnesses the inmate requested, then found inmate guilty after inmate stated he "did not know of any witnesses" who could corroborate his testimony.)

Here, although a reasonable jury could find that Wilkins erred in not giving Gibson a written disposition, there is insufficient evidence from which it could find that this failure prejudiced her in any way. Wilkins wrote that he found Gibson guilty based on a misbehavior report written by C.O. Tanguay on December 8, 2015. (Docket No. 100-16 at p. 6.) As reasons for his disposition, Wilkins wrote, "you have an atrocious violent disciplinary record, with numerous incidents involving refusing a direct order. This is to impress upon you your need to obey all direct orders of staff promptly." (Id.) Wilkins sentenced Gibson to 180 days in SHU.  (Id. at p. 4.) Gibson appealed this sentence, and it was reduced to 60 days. (Docket No. 100-1 at p. 19, citing Gibson Dep. 40:22-25; see also Gibson's Response, Docket No. 110 at p. 10-11, referring to 60 days served in SHU as a result of this hearing)

Gibson argues that she was prejudiced because when she appealed her

24

sentence, she had only limited knowledge of its basis. Gibson asserts that she could only appeal on grounds of "overly excessive punishment" and no written disposition, while if she had received the written disposition, she could have challenged the evidence presented as insufficient and could have challenged Wilkins's use of her prior disciplinary history. (Docket No. 110 at pp. 20-21.) But Gibson does not identify any evidence she could have used to challenge Tanguay's report that she refused a urinalysis test.  Nor does she cite any precedent that a hearing officer may not consider an inmate's disciplinary history when determining an appropriate sentence. Finally, any concerns about excessive punishment were resolved by Gibson's successful appeal and the reduction in her sentence. Because even if she did not receive a written disposition, Gibson suffered no prejudice from this error, this Court grants summary judgment to Defendants on this claim.

**b.  Insufficient assistance by West**

In preparation for the Tier III hearing on the June 3 incident, Gibson requested that West obtain 11 documents and conduct interviews with Facility Medical Doctor Braselmann and Defendant Zelko.  (See "Documents and Things," Docket No. 100-13 at pp. 33-34.) West states in his affidavit that he gave Gibson copies of DOCCS directives #4933, 4932, 4910, and the Inmate Rules. (Docket NO. 100-15 at p. 2.) The record does not contain an explanation for why West failed to procure the other documents Gibson requested. Over the course of the hearing, Siglin obtained all the documents Gibson requested that were available, and read them to her.  He took confidential  testimony from Office of Mental Health regarding the impact of Gibson's medications. He told her that her name did not appear on the facility callout list. (Docket No. 100-13 at p. 21.) Defendants

argue that Siglin's actions remedied any problems caused by West's failure to provide Gibson with what she requested.

As an initial matter, this Court grants summary judgment to Siglin on this claim, because the record lacks any evidence from which a reasonable jury could conclude that Siglin's conduct at the hearing contributed to Gibson's being denied proper assistance. Siglin served as the hearing officer, not the assistant, and did not have the obligation to help Gibson acquire the documents she requested in advance of the hearing. Nevertheless, at the hearing, he clearly made a good-faith effort to obtain and read those documents to Gibson. The claim for insufficient assistance against Siglin will therefore be dismissed.

Courts must assess failures of assistance on a case-by case basis to assess whether the inmate suffered actual prejudice. Gibson argues that if West had provided the documents she requested before the hearing, she could have better marshaled her evidence and presented a defense at the hearing. But a reasonable jury could not find that Gibson was prejudiced in any way by the manner in which she received the materials she requested.

The Second Circuit has found error where an inmate was deprived of documents that would have enabled him or her to understand the basis of the charges against him or her, or of witness testimony that could have proved exculpatory. See Samuels, 166 F. App'x at 555; Ayers, 152 F.3d at 81. Here, although West admittedly did not give Gibson most of the documents she requested in advance of the hearing, Gibson nowhere claims that she was unable to understand the charges against her, or that any evidence Siglin provided at the hearing could have proven exculpatory had she received it earlier. Gibson

26

has identified no harm she suffered from receiving the evidence from Siglin instead of from West. This Court therefore grants Defendants' motion as to Gibson's claim of insufficient assistance against Siglin and West.

**F.     Equal Protection Claim**

In their moving papers, Defendants argue that any claim sounding in equal protection must fail because Gibson has not suggested that she was treated differently from other, similarly situated inmates with no rational basis for the difference in treatment. (Docket No. 100-1 at p. 14.) Gibson argues that Defendants' use of anti-Semitic and anti-transgender epithets while assaulting her establish an equal protection violation. (Docket No. 110 at p. 33.)

As an initial matter, none of the numbered claims in Gibson's complaint explicitly cites the Equal Protection Clause. Nevertheless, this Court must read Gibson's submissions and arguments for the strongest arguments they make.

"[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005) Alternatively, the allegation that a plaintiff has been "intentionally treated differently from others similarly situated" with "no rational basis for the difference in treatment" can also suffice to state a constitutional claim. Id. (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000)). An essential element of an equal protection claim is showing the differential treatment between the plaintiff and those

27

in another group. <u>See, e.g.</u>, <u>Phillips v. Girdich</u>, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause, for example, a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.") (citing <u>Giano v. Senkowski</u>, 54 F.3d 1050, 1057 (2d Cir. 1995).

Here, Defendants argue that Gibson has not sufficiently shown that she, as a Jewish and transgender person, was treated differently from other, non-Jewish or non-transgender inmates. This Court agrees. Gibson argues in response that as a Jew, she is a member of a protected class, and that Defendants Zelko, Geter, Fox, and Fiscus were known to harbor animus towards Jewish and transgender inmates. (Docket No. 110 at p. 33.) But this does not suffice to state an equal protection claim, let alone to survive summary judgment.

Even viewing all the evidence in the light most favorable to Gibson, this Court finds her Equal Protection claim, insofar as she makes one, cannot survive summary judgment because she points to no facts suggesting that she was treated differently from other similarly situated inmates.

## G.    Qualified Immunity

Defendants argue that they are all entitled to qualified immunity because, in all situations, they either did not violate a clearly established right, or reasonably believed their conduct was lawful.

The determination of whether a government official is immune from suit is informed by two factors. <u>Doninger v. Niehoff</u>, 642 F.3d 334, 345 (2d Cir. 2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff,

show that the conduct at issue violated a statutory or constitutional right, and if so, whether that right "was clearly established at the time of the challenged conduct." Morse v. Annucci, No. 9:13-CV-1354 LEK/DEP, 2015 WL 5725046, at *6 (N.D.N.Y. Sept. 29, 2015) (quoting Terebesi v. Torreso, 764 F.3d 217, 230 (2d Cir.2014)). When a plaintiff shows facts making out a violation of a constitutional right, a defendant may establish its qualified immunity by demonstrating that (1) the right was not "clearly established" or (2) even if the right was "clearly established," "it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013). The law of qualified immunity "does not require a case on point concerning the exact permutation of facts that state actors confront in order to establish a clear standard for their behavior." Elder v. McCarthy, 967 F.3d 113, 131 (2d Cir. 2020) (citing Hancock v. Cnty. of Rensselaer, 882 F.3d 58, 69 (2d Cir. 2018)).

Regarding Gibson's Eighth Amendment claims, viewing the disputed facts in the light most favorable to Gibson, there is no way a reasonable officer could believe that the assault Gibson describes was lawful. Defendants Zelko, Geter, Fox, and Fiscus therefore are not entitled to qualified immunity on this claim.

.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted in part and denied in part. Because four denials of matzah and grape juice was not a substantial burden on Gibson's free exercise of religion, Defendants Hawk, Clark, Giwaosagie, and Delgiorno are granted summary judgment as to those claims. Because denying a menorah in SHU furthered a legitimate penological interest, Gibson's First

Amendment claims against Bashaw and DOCCS are also dismissed.

However, because Defendants have not addressed whether the denial of the menorah was the least restrictive means to achieve a compelling penological interest, Defendants' motion will be denied as to Gibson's RLUIPA claim against DOCCS; but granted to Bashaw due to the mootness of Gibson's claim for injunctive relief against him.

Because a material question of fact remains as to the amount of force used against Gibson, and whether Defendants acted with malice on June 3, 2016, Defendants Zelko, Geter, Fiscus, and Fox are denied summary judgment on Gibson's Eighth Amendment claim.

Because any deprivation of due process in relation to the December 2015 and June-July 2016 hearings was at worst harmless error, summary judgment is granted to Wilkins, Siglin, and West as to Gibson's claims regarding those hearings.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 100) is GRANTED in part, DENIED in part.

FURTHER, that this case is REFERRED for alternative dispute resolution under Section 2.1.B of the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York ("the ADR Plan").

FURTHER, that the parties shall comply with all relevant requirements of the ADR Plan, which is available at http://www.nywd.uscourts.gov.

FURTHER, that within seven days of this decision, the parties shall contact ADR Administrator Amanda G. Williams for direction on how to proceed with mediation under the March 16, 2020 General Order Re: Alternate Dispute Resolution Under

Circumstances Created by COVID-19 and its progeny.

FURTHER, that the parties shall file a joint written notice concerning the status of mediation on May 24, 2021.

FURTHER, that the Clerk of Court is DIRECTED to amend the caption of this case and to remove as defendants Nicole Heary, Robert Siglin, C.K. Wilkins, J. West, M. Clark, R.W. Delgiorno, T. Hawk, Bryan Bashaw, and A. Giwaosagie.

FURTHER, that the Clerk of Court is DIRECTED to mail a copy of this Decision and Order to Plaintiff at her current address.

SO ORDERED.


Dated:        March 5, 2021
              Buffalo, New York


                                               s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                           United States District Judge